## Edwin Hunt, Appellant, *v.* John Q. Hoyt and Wife, Appellees.

### APPEAL FROM COOK COUNTY COURT OF COMMON PLEAS.

It is negligence for a party, in hanging a sign on a windy day, in a city, upon an active thoroughfare, to use a swinging stage for the purpose, that has not a rim, or some other preventive against the sliding off of tools, which may occasion injury to passers on the street.

A person injured by reason of such negligence may recover for the length of time the sickness continued, as a component part of her claim.

This was an action on the case, brought by Hoyt and his wife against Hunt, to the September term, 1857, of the Cook County Court of Common Pleas, for an alleged injury to the wife, by the falling of a hammer from a building in the city of Chicago, upon which the defendant's servants were putting up a sign, and striking Mrs. Hoyt upon the head while walking along the street of said city.

The declaration contains two counts, and alleges that Martha Ann Hoyt, the wife, on the first day of June, was walking along Lake street in said city, and in front of a building possessed by Fisk & Ripley; that the defendant's servants were engaged in putting up a sign upon said building, and for that purpose were using a certain iron hammer; that the said servants so carelessly and improperly used, managed and directed said hammer, that the same, by and through the carelessness, negligence and improper conduct of said servants, fell and struck the said Martha Ann Hoyt upon the head, etc.

The second count is substantially the same.

The defendant pleaded the general issue.

The material evidence is stated in the opinion of the court.

The jury found the defendant guilty, and assessed the plaintiffs' damages at five hundred dollars.

Thereupon the defendant moved the court for a new trial, which was denied.

The court entered judgment for the plaintiffs for the said sum of five hundred dollars, the damages assessed.

Scates, McAllister & Jewett, for Appellant.

S. B. Perry, for Appellees.

Breese, J.   Three points are made by the counsel for appellant:

*First.* That the men engaged in putting up the sign, were employed by, and were the servants of Fisk & Ripley, and not of the appellant.

*Second.* If the appellant is to be regarded as the master of these workmen, then he would be liable only for a want of ordinary care, or for gross negligence.

*Third.* That positive proof of negligence must be produced by the plaintiff. And that proof of the accident and injury is not sufficient to show negligence, nor can it be inferred from the fact of the accident or injury.

The first point is disposed of by the testimony of *David B. Fisk,* the first witness sworn on behalf of plaintiffs below. He says he engaged Robbins and Gaylord to paint some signs for Fisk & Ripley, and they informed him that Mr. Hunt put up signs, and told him the price he charged. He then went to Hunt's store to ask the price, and was told by some one at the desk what it would be, and he agreed with Mr. Hunt's foreman to put up the signs. Hunt said they had men for that purpose, and he would send them up. After waiting, and the men not coming, he went again to see about it, and this time saw Mr. Hunt, and he promised to send the men up at once. They came and put up the signs, and in putting them up, broke a pane of glass. He paid Mr. Hunt for hanging the signs.

*Roswell F. Farr* states, after the injury was received by Mrs. Hoyt, Mr. Hunt came into the store and had a conversation with him about it. Hunt said his workmen were as good and as careful as any workmen in the city, and that he would have nothing more to do with putting up signs, it was too dangerous, and too much risk in it.

The defendant's witness also set this point at rest. *George Hauslein,* his foreman, states, Mr. Fisk employed him to do the job, and he sent the men there, and superintended putting up the signs; was told by Mr. Hunt not to put up any more signs.

*John Cline* states, he worked for Mr. Hunt, and was employed by Hauslein, with Hunt's approbation, to put up the signs; Henry Brandon, another man employed in the shop, was with him; had been working on the staging nearly all day, putting up signs; did not tell Hunt that day about an accident having happened there before.

*Henry Brandon* states, he was at work on the staging; did not tell Mr. Hunt that any accident happened in the morning.

*Benjamin F. Robbins* states, that he painted the signs for Fisk & Ripley, and referred them to Mr. Hunt, to get them put up; owned the staging, and lent it to Hauslein, to put up the signs for Mr. Hunt.

This evidence is clear and conclusive, upon the first point, that the men employed to put up the signs were the servants of the defendant, and not of Fisk & Ripley.

How stands the proof on the question of negligence, and

does it show that the injury was the result of mere accident, against which ordinary care could not have guarded? R. F. Farr states that he was an eye-witness to the injury Mrs. Hoyt received; saw Mrs. Hoyt cross the street, from the north to the south side; when she reached the side walk, Mr. Hunt's men were at work, on a swing stage, attached to the store of Fisk & Ripley, putting up signs for them; as she was walking on the sidewalk, he saw a hammer fall from the staging, and saw it strike her on the head; she fell partly down, and he caught her before she struck the sidewalk. The men were on the staging, putting a sign over the top of the second story window, about thirty feet above the sidewalk; they could be seen from the sidewalk, and no others at work except the men putting up the signs; the hammer had a handle; one end had a face, and the other end wedgeshaped, and would weigh about one pound; the staging was a swinging stage, supported by ropes; the injury happened about half-past two o'clock in the afternoon.

George Hauslein states, when the hammer fell from the staging, he was on the opposite side of the street, looking to see that the sign was put up straight. At the time the hammer fell, the men were holding up the sign and screwing it to the building, and were not using the hammer; it fell between the staging and the building; it was a windy day, and the wind had some effect on the staging, to swing it, and loose the fastenings.

John Cline says, he used the hammer to drive the screw in a little, and then laid it down behind him on the staging; it fell without his knowing how it came to fall; the wind was blowing pretty hard, and they were then at the corner of the building, just where the wind caught them over the top of the roof of the city hotel, a much lower building than the one they were at work upon. The staging was about two feet wide, and had no railing or board upon the sides; nothing to prevent the tools from sliding off; the wind made the staging swing some, and he tried to fasten it to some ornamental work on the iron columns, but the wind slipped off the fastenings; the ornaments were too weak to hold it; the columns were about a foot out from the building, so that the staging rested against them, leaving a space between it and the face of the building; the staging was suspended by ropes, from the top of the building; does not know how the hammer got off the staging, but saw it falling.

H. Brandon says, he worked on the staging with Cline; was holding up the sign while he screwed it to the building; was on the left, and Cline on the right side; both sitting on the staging; Cline knocked a screw in, and laid the hammer on the staging behind him; saw it on the middle of the staging; don't know how it came to fall; it was very windy.

These workmen, it seems, do not know how the hammer came to fall, though one of them, Cline, saw it falling. He says, after driving in the screw, he laid the hammer down behind him on the staging—the wind was blowing pretty hard, and Brandon says it was very windy, and so does Robbins, and his testimony fully explains, " how the hammer came to fall," and fixes the charge of negligence upon the appellant, although Robbins gives it as his opinion that the staging was a proper one to use in putting up signs, and combined all the qualities needed for such a purpose. The staging belonged to him, and as he had used it, successively, for the same purposes, he is of the opinion it could not be improved. He says, " It was twenty-two feet long and two feet wide, *and had no protection on the sides !*"

Mr. Robbins is a practical man, doubtless, and should be presumed to have correct notions of such a matter, but we, not so practical, are at a loss to perceive how he could have judged such a staging to possess all the requisites necessary for the dangerous business in which it was employed, and in the great thoroughfare (Lake street) of our most populous and stirring city. No witness, it is true, has stated that the injury occurred in that street, but the declaration so alleges, and it was admitted on the argument. In a quiet town, on a calm day, in a secluded place which foot-passengers seldom frequent, the apparatus might be safe, and should a sudden gust of wind cause it so to swing as so throw off the tools, thereby causing injury to a person, a charge of negligence might not be sustained. In a city, and in a street, where people congregate and pass in crowds, and on a very windy day, to suspend such a staging by ropes, with no bottom or other stays, from the top of a high building, and thirty feet above the sidewalk, and with no protecting rim on the sides or ends, is such an exhibition of negligence as to deserve, as it has received, the severe but just judgment of the jury. The workmen say they did not know how the hammer came to fall. Surely, there is no difficulty on that head from their own evidence, and that of Mr. Robbins. The day was very windy—the staging was swinging back and forth by the wind—the workmen were not self-possessed—the hammer, when used, was hurriedly and carelessly placed on the staging, which, having no stays, or board rim at the sides or ends, could not retain it, when it was swayed to and fro by the wind, throwing it against the columns with great violence, producing a powerful concussion, and causing the hammer to slide off. Had the staging been a proper one for use in a populous city, and kept from swaying by proper fastenings at bottom, secured to the pavement or railings, which are always at hand in cities,

and the sides and ends protected by a slight rim, this injury would not, in all human probability, have happened ; or, if happening, no jury would say the workmen had not used all the care and diligence, and caution required of them. Mr. Robbins may be taught, at some future day, by the finding of a jury, that his staging, as he has described it, is not " all that is needed " for the purpose of putting up signs on " a very windy day," on a tall building, in the great thoroughfare of a populous city.

The facts are made to bear more heavily against the appellant, because he was informed that an accident had happened in the morning of the same day, at the same place, occasioned by the high wind, causing the destruction of a sign and of a pane of glass. He said the men told him,—though they say they did not,—that they were obliged, in the morning, to drop a sign on account of the wind, to save themselves from falling, and that they were afraid to work there.

Under these facts, we are free to say, that the grossest negligence marked the conduct of the appellant in permitting to be used, on such a day, at such a time, in such a crowded street, and forewarned, an apparatus so unfit for the dangerous business in which it was employed.

We have examined the cases cited by the appellant's counsel, but think they do not bear upon this case, except so far as the maxim of *respondeat superior* is applicable. The case shows actual negligence in the master, in the particulars we have pointed out, and the views we have expressed on the facts require no support from adjudicated cases.

Another point was raised, but not much relied upon by appellant's counsel, on the second instruction given for appellees, that " in estimating the damages, if they found for the plaintiff, the jury should take into consideration the length of time Mrs. Hoyt was sick in consequence of the injury, the effect of the injury upon her, and the bodily suffering consequent thereupon."

The counsel thinks this instruction is too broad, and involves damages for loss of time, for which the husband alone would be entitled to an action.

The length of time the injured party was sick, is, we think, an important element in her claim for damages, and taken in connection with the effect of the injury upon her, and of her bodily sufferings, also, they all become properly component parts of such claim. There is no color for the idea that the jury were so misled as to give damages for loss of time. We see no error in the instruction as given. *Slater* v. *Rink and Wife,* 18 Ill. R. 527.

The judgment is affirmed.

*Judgment affirmed.*