## BENJAMIN YOUMANS vs. LEWIS PADDEN.

1. Where the driver of a carriage used for the conveyance of passengers for hire, leaves the horses attached thereto, while any passenger remains in or upon the same, without making such horses fast, or without some suitable person to take the charge or guidance of them, is, notwithstanding the gentle and steady habits of the horses, guilty of culpable negligence ; and when in such case the team runs off, and a person in attempting to leap from the carriage is injured, with ut such negligence on his part as to amount to a fault, the driver and owner, or either of them, are liable for the damages sustained.

2. Common carriers of passengers are bound to use the utmost care and diligence of cautious persons, to prevent injury to passengers.

3. In such a case, the question is not whether the injury would or would not have been occasioned had the injured party remained in the carriage, but to defeat his right to recover, on the ground that he contributed to the injury, it must appear that in escaping from the carriage he acted in view of all the circumstances unreasonable, and that such unreasonable conduct contributed to the injury.

4. In this class of cases, the injured party is entitled to recover for loss of time, expenses incurred, and where the injury is permanent, prospective damages.

5. Where a person is injured, by reason of the negligence of another, it is his duty to take ordinary care of the injured part, and where the injury is serious, to employ a surgeon of average skill and information in his profession.

6. Where, in such case, the plaintiff employs a surgeon of average skill and he honestly and faithfully discharges his duty, but errs in judgment and amputates an injured limb, it will not avail as a defense in an action against the person through whose negligence the injury was occasioned, that the limb might have been saved by the exercise of the highest degree of skill.

*Allegan Circuit, March,* 1870.

*G. P. Doan,* for Plaintiff.

*J. F. Alley, F. J. Littlejohn* and *Arnold & Stone for Defendant.*

The facts sufficiently appear in the charge.

*Charge to the Jury,* BROWN, J.—

GENTLEMEN OF THE JURY : This is an action brought by the plaintiff to recover damages which he alleges he has sustained by reason of the negligence of the defendant, in and about the management of a span of horses attached to a passenger carriage or omnibus used for carrying passengers for hire, about the first of November last, at the village of Allegan.

There are certain facts in this case about which there appears to be no controversy :

First, the defendant gave or handed to the plaintiff an omnibus ticket—in other words, solicited the plaintiff to take passage in the omnibus.

Second, the defendant, after the plaintiff had taken a seat in the omnibus, at the Allegan House, took charge of the conveyance and drove the same to the Exchange Hotel, and there left the omnibus with several passengers therein, among whom was the plaintiff, without hitching his team or leaving any one in charge of them.

Third, the team started off down the street without a driver, while the defendant was in the hotel.

Fourth, the defendant in getting out of the omnibus, while in motion, received an injury to his thumb, by the swinging together of the omnibus door.

Fifth, the plaintiff has since had his thumb amputated .

In respect to these things, I believe there is no controversy.

On the part of the plaintiff, he claims that after it was discovered that the horses were without a driver, the passengers commenced getting out of the omnibus ; that he was next to the last to alight ; that the team appeared to be going rapidly ; that the swaying of the omnibus indicated that the horses were running, but that the night was so dark that he could not tell whether they were really running or not.

The plaintiff further claims, that a few days after his return to Mendon, where he resides, his hand or thumb became so swolen, inflamed and painful that he was induced to apply to a physician. He fixes the time of such application at four days after the injury. Dr. Clapp, who attended him, thinks that the plaintiff first called upon him for treatment for his hand about the 10th of November, but says the time may have varied either way. You have heard the testimony of Dr. Clapp as to his treatment of the injured hand, and as to his general treatment of the plaintiff, who, he says, was very much debilitated, and whose debility he ascribes to the suffering occasioned by the injury complained of. The plaintiff claims that by reason of this injury, he has been unable to labor from that time to the present. He has given evidence tending to show the value of his time which he claims he has lost, and of the expenses he has incurred by reason of such injury.

On the part of the defendant, it is claimed that he has not been guilty of negligence ; or, if guilty of negligence, the plaintiff contributed to the injury, and that he is not, therefore, entitled to recover. The defendant further claims that after the occurrence of the accident, the plaintiff was negligent as to the procuring of the services of a surgeon, and that the surgeon when procured did not treat the injured hand with that degree of skill which was requisite in such a case. The defendant further claims that, under the pleadings, it is incumbent upon the plaintiff to show that the defendant was not only the owner of the team and omnibus, but that he was a common carrier of passengers ; and it is claimed that this showing has not been made.

Questions often arise as to the right of the plaintiff to recover, where he has been injured by the negligence of the

defendant, coupled with some degree of negligence on his part. The general rule in such cases is, that a party is not entitled to compensation for his injury, if he, "by his own or his agent's ordinary negligence, or willful wrong, contributes to produce the injury of which he complains; so that, but for his concurring and co-operating fault, the injury would not have happened to him."

It is not essential to a defense in this class of cases that the plaintiff should have been in any degree the *cause* of the act by which he is injured.    It is enough to defeat the plaintiff, if the injury might have been avoided by his exercise of ordinary care. The question to be determined is not, whether the plaintiff's negligence *caused*, but whether it contributed to the injury he complains of.

It is contended, on the part of the plaintiff, that the defendant was a carrier of passengers.    Of course, this must affirmatively appear by the proofs, in order to apply the rules o f law which, I shall state to you as touching ones' liability as such carrier; and in determining this question it is competent for you to do so from positive testimony or evidence upon that point; or from facts and circumstances as developed at the trial by the evidence,

In the first place, was the defendant negligent?    As there is no dispute as to the alleged fact that the defendant left his horses at the Exchange Hotel, unhitched and unattended, while passengers were within the coach, I advise you, that no matter what his custom was, or how gentle his team had been, in view of § 1597, *C. L.* making it unlawful to thus leave a team, the defendant must be deemed guilty of culpable negligence.    Notwithstanding this, I am not prepared to say to you that the plaintiff would be excused from using ordinary care to prevent an injury to his person; but, on the contrary, I think he would be required to use such ordinary care.    By, this, you must not understand me as saying it was the duty of the plaintiff to remain in the coach, on a dark night, when he had ascertained that there was no driver on the box; but, I leave it for you to say, whether it would become a prudent man, under such circumstances, without knowing where the carraige was going, or

what would become of it the next moment, to longer remain; or, whether it was the plaintiff's duty to escape as soon as possible. A passenger is not to be deemed guilty of contributory negligence when he only takes such risk as, under the same circumstances, a prudent man would take. The question is not whether he would have been injured if he had remained in the coach. The law does not require a passenger to be endowed with foreknowledge, nor does it require him, in the hour of apparent imminent danger, to sit down and philosophise or speculate upon the chances of his escape from injury by adopting this or that course.

The question is, did he act unreasonable, in view of all the circumstances, and were his acts so unreasonable as to amount to a fault on his part, which contributed to the injury. If not, and if you find for the plaintiff upon the other alleged facts, to which I have called your attention, your verdict must be for the plaintiff.

Much has been said as to the duties of carriers of passengers. Upon this point, I advise you that common carriers of passengers are bound to use more than ordinary care; *i. e.*, more than such care as is used by very cautious persons even; and if a passenger receives an injury which any reasonable care and skill could have prevented, the carrier is liable therefor. 49 *Maine*, 279; 5 *Duer*, 193; 4 *Iowa*, 547; 13 *Cal.*, 599; 11 *Grat.*, 697; 2 *McLean*, 157 : 4 *Green*, 555; 13 *Conn.*, 319. They are bound to use the utmost care and diligence of cautious persons to prevent injury to passengers

If you find the plaintiff entitled to recover, the next question will be as to the amount, and upon this point I advise you that you are not to award damages by way of, or as a punishment to the defendant If liable, he is to be held to answer in such sum as will conpensate the plaintiff for the loss he has sustained by reason of the injury—for such damages as were the natural and proximate result of the injury; and in determining that, you may consider the plaintiff's loss of time, the suffering he has endured, the expense he has necessarily been put to, and whether he has sustained a permanent injury; and in case you find he has sustained such permanent injury by reason

of the negligence of the plaintiff, without fault on his part, or the person employed as a surgeon. you may allow him such damage for such permanent injury as you shall think it reasonably certain he will suffer in the future.    18 *Ill.*, 416 ; 20 *Id.*, 235 ; 18 *N. Y.*, 534 ; 20 *Barb.*, 282 ; 36 *N. H.*, 9 ; 20 *Ill.*, 544.

It is proper to consider another question which has been raised by the defendant's counsel, and in relation to which testimony has been given.    It is, as to whether the plaintiff has, since the injury, about which he complains occurred, used and resorted to proper means to prevent the aggravation of the injury—whether the thumb which he has lost might, with proper care, have been saved.    In determining this question, I advise you that it was the duty of the plaintiff to take ordinary care of the injured hand ; and to procure suitable surgical aid ; and by this I do not mean that it was his duty to employ the most skillful surgeon, or that the surgeon should use the highest degree of skill which the profession could master. The rule in this respect is, that the skill to be used and exercised by a surgeon, is, that he must come up to the average standard, and must be judged by its tests, and in the light of the present day.    *Shear.* and *Red. on Neg.*, § 437.    A physician, like an attorney, is not answerable in a given case for the errors of an enlightened judgment. 19 *Pick.*, 333 ; *Shear* and *Red. on Neg.*, § 440.    If Dr. Clapp possessed an average qualification in his profession, and faithfully and honestly exercised his judgment in treating the plaintiff, the plaintiff could not sustain an action against him for negligence ; and this being so, the defendant in this case could not set up a defense or claim a reduction of damages on account of such treatment or want of treatment.    The rule would be otherwise if Dr. Clapp did not possess the knowledge and skill which I have indicated as being requisite, and if by reason of such want of skill or care the plaintiff lost his thumb.    In such case, the defendant should not be held responsible for the negligence of the surgeon, but only for the natural results of his own wrong.

It is contended on the part of the defendant that the plaintiff did not apply to a surgeon within a reasonable time after the injury, and that by reason of such neglect he contributed

to aggravate the injury. The question is not, could he have saved the thumb by applying at once to a surgeon, but the question is, was his negligence such as to amount to a fault ; and in determining this question you will look at his surroundings and the condition of the injury. Did he know or have good reason to believe that a bone was broken. If so, what did ordinary prudence require him to do ? If he did not know that the bone was fractured, did he act as a man of ordinary prudence would under like circumstances. These are some of the questions you are to consider in passing upon this branch of the defense.

It devolves upon the plaintiff to establish his right to recover by a preponderance ' of evidence. By this, I do not mean that he must necessarily have a greater number of witnesses than the defendant. You are not to weigh testimony as you would merchandise. It cannot be measured or counted like produce. Each juror should ask himself honestly, in view of all the evidence in the case, " What are my convictions, and what do I believe in relation to the case ? " You are to judge of the testimony of witnesses from their appearance on the stand ; their apparent interest or anxiety in the result of the case ; the probability of their statements ; whether alleged facts about which a witness testifies are natural or probable, or whether the statements appear exaggerated and unreasonable. These are some of the tests you are to apply in weighing testimony. *      *      *

Verdict for plaintiff for $155.