## William Bochat, Appellee, v. Charles T. Knisely, Appellant.

## Gen. No. 14,007.

1. EVIDENCE—*effect of admission of counsel.* Where an attorney during a trial of a cause makes admission of a particular fact in issue, he is thereafter estopped to deny such fact, and no proof thereof is required.

2. VERDICT—*when not disturbed as against the evidence.* A verdict which is not against the clear preponderance of the evidence will not be set aside on review as against the weight of the evidence.

3. VERDICT—*when not excessive.* Held, that a verdict for $10,000 rendered in an action on the case for personal injuries was not excessive where it appeared that mental and brain trouble of a permanent character ensued as a result of the injury in question.

4. NEGLIGENCE—*when doctrine res ipsa loquitur does not apply.* A workman engaged in and about the construction of a building is not entitled to claim the benefit of the doctrine *res ipsa loquitur* if he is injured by reason of being struck by a falling brick; but, *held,* in this case, that the evidence justified a verdict finding negligence in the defendant where such a workman was so injured.

5. INSTRUCTIONS—*what not oral, within meaning of law.* A court may orally withdraw an instruction which it has read to the jury and may likewise orally direct the jury to disregard the instruction so read.

6. INSTRUCTIONS—*when not error to refuse leave to present additional.* When the jury is about to retire to consider of their verdict, it is not error for the trial court to refuse to permit counsel to prepare and present an additional instruction in lieu of a bad instruction which the court has first read and then orally withdrawn from the consideration of the jury.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. WILLIAM H. McSURELY, Judge, presiding. Heard in this court at the October term, 1907. Affirmed. Opinion filed November 12, 1908.

**Statement by the Court.** This is an appeal by Charles T. Knisely, the defendant below, from a judgment of ten thousand dollars rendered by the Superior Court of Cook county against him on July 18, 1907, in favor of the plaintiff below, William Bochat. This

judgment was based on the verdict of a jury in a personal injury suit, a motion for a new trial and one in arrest of judgment having been previously overruled by the court. The suit was originally begun against John A. Knisely, Charles T. Knisely and Richard W. Knisely, co-partners as Knisely Bros., and the declaration, which is in one count, avers that on or about July 19, 1905, the plaintiff was employed by the Falkenau Construction Company as a laborer, and was working for them in the performance of the duties assigned him about a certain building at the intersection of Twenty-second and Fisk streets in Chicago, on which building the Falkenau Company had a contract to perform certain work; that the defendants (John A. Knisely, Charles T. Knisely and Richard W. Knisely) were partners, doing business under the name of Knisely Bros., had a subcontract to do certain work on said building, and were working on it; that while the plaintiff was about said building, in the exercise of due care and caution for his own personal safety, the said defendants ''did knowingly, carelessly, negligently and unlawfully cause and permit a certain heavy vitrified paving brick or stone substance to fall from an upper story of said building and strike the plaintiff with great force and violence upon the head, whereby'' he was severely injured.

To this declaration all three of the defendants filed a joint plea of the general issue (not guilty), but before the case was reached for trial the defendants John A. Knisely and Richard W. Knisely had died. When a jury was called their death was suggested by the plaintiff's attorney and it was ordered that the said cause proceed against the defendant Charles T. Knisely.

When the first witness called to the stand for the plaintiff—a bricklayer employed by the Falkenau Construction Company—was asked by counsel for plaintiff if he knew what firm or people were putting in the window-frames of that building and the win-

dows, the counsel for the defendant—then representing of course only Charles T. Knisely—interrupted with the statement: "We admit that we did; they were put in by Kniselys; we were putting those in." This admission was afterwards repeated when another witness was on the stand. In the further conduct of the case there were frequent allusions in the evidence and pleadings to "the Knisely men", meaning the men working for Knisely Bros. on the windows and window-frames, but no question was mooted on either side, of the membership of the surviving defendant in the contracting firm of Knisely Bros., or of the constituent membership of that firm.

After the evidence was all in and the cause had been argued by the jury, certain instructions which had been prepared and tendered to the court by the plaintiff and defendant for that purpose, were read by the court to the jury—twelve in all. These instructions were then delivered to the bailiff, together with certain exhibits received in evidence. While the jury were retiring to their room, and before the bailiff had delivered the instructions to the jury, the trial judge recalled the jury from the jury room and said to them: "Gentlemen of the jury, the court has given you an instruction which I shall read to you, and then after I read it through I will make an announcement concerning it".

The judge then read the instruction numbered "5" of those tendered by the defendant, and made this oral statement to the jury:

"The court gave that instruction to you, gentlemen, but since giving it the attention of the court has been directed to this instruction, and the court is now convinced that that is not a correct statement of the law, and that it would have been error to give you that certain instruction, so the instruction will be withdrawn from you and you will give it no consideration whatever, considering it as if it had not been given to you and as if you had not heard it at all. That is all."

Thereupon the court, in the presence of the jury, erased the word ''Given'' on the said instruction, and the following annotation was made thereon:

''Instruction withdrawn, jury recalled, and instructed to disregard same.

McSURELY, Judge.''

And the said instruction was thus withdrawn from the jury and from the instructions which had been previously given. To all of these proceedings the defedant objected and excepted. The defendant's counsel then asked leave of the court to prepare and tender another instruction covering the degree of care owing by the defendant to the plaintiff, but the court refused to allow this on the ground that it was too late, saying: ''The theory is that you have handed in all the instructions that you desire to be given''; and ''You would not have known that I refused it'' (alluding to the instruction which was withdrawn) ''until I had given the instructions''.

The defendant excepted to the court's ruling ''in refusing to receive and consider a further instruction on the degree of care to be exercised by the defendant''.

In this court the assignments of error cover, and there have been argued, these objections to the judgment: That the declaration did not state a cause of action; that the verdict on which the judgment is based is unsupported by the evidence and is against the weight of the evidence, and that a peremptory instruction for the defendant as asked should have been given.

The evidence is alleged to be insufficient to show that employes of Knisely Bros. were at the time of the accident handling bricks at the place from which the brick in question fell, and that if there be any evidence tending to show this, it is rebutted by a preponderance of evidence to the contrary.

It is said that the ''doctrine of *res ipsa loquitur*'' does not apply, and that without the application of

that doctrine there is no evidence which proves negligence against any one.

It is also urged that the burden was on the plaintiff to prove that Charles W. Knisely was a partner in the firm of Knisely Bros., and that this burden was not carried. Further it is insisted that certain instructions tendered by the defendant and refused by the court were erroneously refused. Also that the damages were excessive.

It is also insisted that the words addressed to the jury when the defendant's instruction five was withdrawn constituted an oral instruction contrary to the statute and a fatal erroneous proceeding. A further error, it is claimed, was committed when the court refused to allow the defendant to prepare and present an additional instruction in lieu of the one withdrawn.

FRANK M. COX, J. F. DAMMANN, JR., and WEISENBACH & MELOAN, for appellant.

B. J. WELLMAN, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

The chief grounds of objection urged against the verdict and judgment in this case—so far as the sufficiency and weight of the evidence go—are, first, that there is no evidence that Knisely's men were handling or using brick at the window from which the brick in question fell upon the head of the unfortunate plaintiff; and, second, that if they were, there is no evidence that their negligence caused the brick to fall, and that in the absence of such proof a conjecture or supposition of the jury that this was the cause furnishes no justification for the verdict.

A vigorous argument is made in insistence on the first of these propositions, but on analysis of the testimony bearing on it we do not see but that the jury were at liberty to decide, as they evidently did, that at the time the brick fell on the plaintiff two men in the

employ of Knisely were working at the southerly
window on the second floor on the east side of the
building, and that they were then using bricks of the
kind that fell, and had two or three at least on the
window-sill either to stand on or to rest a window-
frame upon.

The circumstances of the accident were these: The
plaintiff, William Bochat, was a laborer and had been
a hod carrier for many years when it happened. On
the day, July 19, 1905, he was employed by the Falk-
enau Construction Company, who had a contract for
the entire construction of a building for the Common-
wealth Electric Company, on the southwest corner of
Twenty-second and Fisk streets, in Chicago. His
duties consisted of carrying cement in a bucket from
a cement trough situated about twenty feet east of
the building, to the basement where a cement floor was
being laid. As he with a bucket of cement was about
to enter a basement window midway between the main
easterly entrance of the building and the southeastern
corner thereof, at about three o'clock in the afternoon,
he was struck on the head by a brick falling from
above, cutting his head, making him partially uncon-
scious and entailing other results to be noted when
the damages awarded by the jury are discussed.

The brick was of the kind which was being laid to
make an acid-proof floor on the second floor of the
building. It was a vitrified brick, two inches thick,
four inches wide and six inches in length and weighed
at least nine pounds. Immediately above the base-
ment window through which the plaintiff was making
his entry when struck, was a window in the second
story of the building. There were no windows situ-
ated above the basement except in the second story,
in which there was one south of and of course above
the main entrance, and one north and above the main
entrance. They are respectively denominated in the
testimony the "southeast" and "northeast" windows.
The walls of the building and the roof were com-

pleted—the roof being of tar and gravel. There were no other places from which the brick could have fallen, except the southeast window and the roof. There is absolutely nothing in the record to indicate that the latter possibility is of any significance. It is only a possibility in the sense of its being conceivable. The evidence must, to all reasonable minds, show with certainty that the brick fell from the southeast window in the second story. It was of the same distinctive character and description as those were, which, at the very time of the accident, a subcontractor under the Falkenau Co., named Rosenbaum, with three of his men, were laying on the second story as a floor, and no one else was or had been using that kind of brick in the construction of the building.

One George Laughlin, who was a witness, saw the accident. He was a bricklayer and a foreman for the Falkenau Construction Company at the time. He was about four feet from the plaintiff when the latter was struck. He had come out of the building as the plaintiff was entering the basement. Laughlin had just been in the second story, talking with the chief engineer and building overseer of the Commonwealth Edison Company, the owner of the building. While there, a few minutes only before the accident, as he testifies, his attention had been directed to two workmen who were working on the southeast window, "putting glass in", as he says. These men he afterwards saw when, shortly before the accident, he went up again to investigate the matter. They were at that time moving their tools and paraphernalia, he says, from the southeast window to a window in the south wall. The men whom this witness refers to were, it is evident from other evidence, William Shaw and Harry Bowler (glaziers in the employ of the firm of Knisely Bros.), who alone were working on windows on the second floor on that day, and it is to the negligence of one or both of these men that the accident must be imputed, to hold the defendant liable.

A point is made in argument that the connection of the defendant with the firm of Knisely Bros. was not conceded or proved, but we do not regard this contention as needing detailed discussion. Knisely Bros. had the subcontract for the construction of the windows, and at the time of the trial Charles T. Knisely was the only surviving one of these persons made defendant in this action. Counsel therefore only represented him when twice during the trial, defending on the merits, he expressly admitted that "We had the contract for the windows." "We" must have referred to and included his client, and we consider the admission sufficient to estop any contention here made that the defendant was not proven a member of the firm of Knisely Bros., even if under the implications of the opinions in such cases as Pennsylvania Company v. Chapman, 220 Ill. 428, and Chicago Union Traction Company v. Jerka, 227 Ill. 95, it was open to the defendant to raise the questions after having pleaded the general issue to the declaration—a point which we do not decide.

The question, therefore, whether the defendant was, in contemplation of law, handling or using brick at the window from which the brick which did the injury fell, is the question whether Shaw and Bowler, or either of them, were in the course of their employment so using it.

The testimony on this point before the jury was directly and irreconcilably in conflict.

Shaw and Bowler were both witnesses. Each swore to the same story, and each said that at the time of the accident he was cutting glass, standing on the second floor by a ladder on the north wall of the building, and were not at any window; that they had been glazing windows up to within an hour or less of that time, but had since then ceased that work; that they had been working at the southeast window during the forenoon, coming around to it from the windows in the south wall which they had first glazed, but had ended their work there before the whistle blew at noon; that

at 12:30, when they renewed their work, it was at the northeast window, but that they had concluded that work some time after two o'clock and had been trimming glass by the north wall for at least half an hour, when Laughlin came to them and inquired about the accident that had just happened. Moreover, they testified that at no time either in the morning or afternoon, at either southeast, northeast, or any other window, did they use or meddle with any brick or put any brick on the window-sill or see any brick on the window-sills of either window on the east side of the house. Bowler testified that he saw brick lying on the sills of the windows in the south wall; that he saw the employes of Rosenbaum, who had the contract for laying the floor, lay them there.

But in contradiction of this testimony Laughlin testified that ten minutes before the accident, while on the second floor talking with Davidson, he saw the two Knisely men working at the southeast window putting glass in, and that after the accident, when he went up there, they were at a window in the south wall, preparing to put glass in at that window.

Charles Wright testified that he was a roofer, employed, however, at the time of the accident, by Rosenbaum in putting in the brick floor; that he and his fellow workmen laying the floor were twenty-five feet or so back from the window; the room was a large one—820 square feet—and that neither Rosenbaum nor his men had anything to do with the windows or any occasion to put bricks in the windows; but that at the time of the accident he saw the Knisely men working around some one of the windows—whether the southeast or northeast window, he could not be sure.

Jacob Rybrandt testified that he was a hod carrier working for the Falkenau Company; that immediately —two or three minutes—before the acccident, looking up at the building he saw two men working in the southeast window with the window-frame, and that on

each corner of the window-sill was a brick on which these men were resting the window-frame.

Gustav Jadke, who was a fellow workman of the plaintiff, testified that a couple of minutes before the plaintiff was injured he saw two men (whom he identified as witnesses sitting in the next room, and who, from all the circumstances proven in this case, must have been Shaw and Bowler if any body) working on the southeast window.

Finally, Rosenbaum, the flooring contractor, testified that the two men (whom he identified in the court room), Shaw and Bowler, were at the time of the accident working on one of the windows on the east side of the building; that half an hour before the accident he noticed that they had placed three bricks on the window-sill, one on another, and that in working on the window one of the men was standing on a horse or scaffold which had been placed on the floor, and the other on these bricks in the window-sill, "for the purpose", he says, "of putting in the various trinkets that is necessary, chains and so forth and catches * * * in order to reach up"—"to get on a kind of level, where he could get a purchase". He further testified that he had cautioned these men to be careful; that some time afterward he heard some one cry out from below; that at the same moment he saw the men jump from the scaffold (whether they jumped first from the brick onto the scaffold, he did not know) and run; that they ran by him and left the floor and did not return for half an hour or so, when they came back to the same window to work and worked on that window until quitting time.

The importance and significance of Rosenbaum's testimony are vigorously attacked by the defendant, not only because of the witness' interest in exonerating himself and employes from liability, but because, after testifying that the Knisely men were working "on the windows on the east side of the building at the time of the accident", in answer to the question,

"Which window?" he replied, "If my memory serves me right, it is the northeast window"; and afterwards, on cross-examination, as the defendant's counsel claims, "strongly reiterated the statement that they were in the northeast window".

This was all proper argument for the jury, against the significance of Rosenbaum's testimony, for the brick undoubtedly fell from the southeast window; but we are not of opinion that the jury were without the right to believe, from all the testimony taken together, that Rosenbaum was testifying truthfully, but was confused as to direction or mistaken in the single matter of the identity of the window, or that we have the right to set aside their verdict because they apparently entertained this view.

Rosenbaum was first asked (Rec. 56) where the Knisely men were working, and answered "on the windows on the east side of the building". Asked "Which window?" he replied, as stated, "If my memory serves me right, it is the northeast window".

Later he said on direct examination (Rec. 58): "The moment that they heard the cry from below they jumped off the scaffold and run around me. I was standing—let us see—I would be facing south at that time, standing sideways, like this." (Illustrating.) "Just in this way I was standing". The court said, "That is not south". "A. No, south, *this* way—well, I was facing east and they run behind me". This apparently showed a little confusion as to directions.

When later still, on direct examination (Rec. 59), he was asked by counsel for plaintiff: "At the time these men left the window and ran away—what is your best recollection as to which window it was—whether it was the one on the southeast corner or the northeast corner", the question was objected to by the defendant and excluded. Two other questions by counsel for plaintiff, looking to a possible change in the witness' recollection of further thought, were likewise objected to by defendant's counsel and ruled out.

The witness did on cross-examination (Rec. 69 *et seq.*) say that the men on their return to the floor went to work on "that northeast window", and afterward the counsel for defendant referred to "that northeast window" in various questions and received affirmative answers, but it is evident from the whole trend of the cross-examination that it was probably more the question whether the window to which the men returned to work after the accident was the same which they left at its occurrence, than the identity of that window, that was called to the attention of the witness and was in his mind at this time. At all events, all the testimony, contradictory and inconsistent even as between the witnesses on the same side, as it may be, was for the jury to reconcile, weigh and compare, and it is not a case in which the clear preponderance of the evidence is against the conclusion to which the jury arrived on this branch of the case.

But a more serious question, to our minds, is whether, it being conceded that the evidence was sufficient to establish the use of bricks in one of the manners indicated by the witnesses for the plaintiff on the window-sill of the second floor, by the employes of the defendant, it was sufficient to justify the jury in inferring the negligence of these employes, resulting in the accident.

The defendant, rightly, we think, contends that strictly the doctrine of *res ipsa loquitur* does not apply to this case, but nevertheless, we cannot say, on a careful consideration and analysis of the testimony in the record, that the jury were not justified in inferring, not conjecturing or guessing, but legitimately inferring from it, that the defendant's workmen placed the brick which did the damage in a dangerous position for their own convenience; that having placed it there, they neglected to use and handle it carefully enough to prevent its fall to a place where the plaintiff had business and the right to be, and that they realized

this and admitted it by their actions when the accident occurred.

It is not a very different case in principle from those discussed in Sheridan v. Foley, 58 N. J. Law, 230; Melvin v. Pennsylvania Steel Co., 180 Mass. 196; Armbright v. Zion, 108 Iowa, 338; and Dixon v. Pluns, 98 Cal. 384; nor even from that in Hunt v. Hoyt et al., 20 Ill. 544; and we do not think should be decided differently.

Holding, therefore, as we must, that the evidence is not insufficient to justify the finding of the jury on the issues involved, we do not find the other questions difficult. Chief among them is that raised by the contention of the defendant that the withdrawal of the defendant's fifth instruction was equivalent to an oral instruction forbidden by the statute. We do not think so. We think the principle of decision must be found rather in the case of C. & E. I. R. R. Co. v. Zapp, 209 Ill. 339, than in Daily v. Boudreau, 231 Ill. 228. The instruction was not in the hands of the jury. It was simply in process of transmission through the hands of the bailiff. We do not see any essential difference from the Zapp case. As for the instruction itself, it was plainly bad. We do not think the court abused its discretion in refusing to delay the withdrawal of the jury to enable the defendant's counsel to prepare another. We think that the jury were properly instructed, and that there was no error in the refusal of those instructions offered by the defendant, which were refused. They were, we think, under the circumstances of this case, likely to mislead the jury.

The plaintiff was where he had a right to be. He was not a servant of defendant. The declaration makes allegations covering this, and they were proven. The declaration charges, the evidence tended to show, and the jury found that it did show, that the defendant, by his employes, through negligence, caused a brick to fall on the plaintiff's head while he was in

that place. We think the declaration stated thus a cause of action, and that propositions concerning the existence of a duty on the part of the defendant to "protect" plaintiff had no proper place among the instructions. Nor do we think there was any evidence tending to show that the danger of the accident was a risk assumed by the plaintiff, as one of the refused instructions would imply. Langan v. Enos Fire Escape Co., 233 Ill. 308, is not without bearing on these features of the case.

The damages are large, but there was evidence of mental and brain trouble resulting from the blow. An expert testified that the condition of the plaintiff was, in his opinion, permanent; that it would not be bettered, but would probably become worse. It is very hard to estimate damages under such conditions. Undoubtedly the earlier cases in this state cited by the defendant's counsel tend to fortify his contention concerning the amount of this verdict. But later ones that are familiar apply a more liberal rule. On the whole, we do not think the amount of the damages shows passion or prejudice or requires interference at our hands.

The judgment of the Superior Court is therefore affirmed.

*Affirmed.*