2022 IL App (1st) 2010347-U
No. 1-20-1034
August 29, 2022

FIRST DIVISION

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS,<br><br>     Plaintiff-Appellee,<br><br>  v.<br>DEANDRE JOHNSON<br>     Defendant-Appellant. | ) Appeal from the Circuit Court<br>) of Cook County, Illinois<br>)<br>) No. 19 CR 01647<br>)<br>) The Honorable<br>) Dennis J. Porter,<br>) Judge Presiding.<br>) |

JUSTICE WALKER delivered the judgment of the court.
Presiding Justice Hyman and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1     *Held*:  A conviction of a juvenile for home invasion qualifies as a predicate offense for a charge of being an armed habitual criminal. A court errs by giving written jury instructions that differ significantly from the oral instructions, unless the court explains the difference to the jury.  This court must reverse a conviction obtained after the trial court committed an error in instructions concerning credibility in a case where the prosecution relied on the credibility of a single well-impeached witness.

¶ 2        Following a jury trial, defendant Deandre Johnson was found guilty of violating the armed habitual criminal provision of the Criminal Code. 720 ILCS 5/24-1.7(a) (West 2018). He was sentenced to 7 years in the Illinois Department of Corrections. On appeal, Johnson argues: (1) his prior conviction as a juvenile for home invasion should not count as a predicate offense for the armed habitual criminal conviction; (2) the jury should not have believed the State's key witness; (3) the trial court gave erroneous and confusing instructions; and (4) his counsel provided ineffective assistance. We find the evidence sufficient to support the conviction, but the trial court erred by sending the jury written instructions that differed significantly from the oral instructions without explaining the difference. Because the error concerned the jury's assessment of the key witness's credibility, in a case where the conviction rested entirely on the credibility of a single witness, we find the error prejudiced Johnson. We reverse and remand for a new trial.

¶ 3                                            BACKGROUND

¶ 4        At approximately 1 a.m. on January 3, 2019, Johnson called Melinda Perry and asked her to pick him up from an address on the south side of Chicago. After Johnson entered the vehicle, police pulled her over and arrested Johnson. Prosecutors charged Johnson with violating the armed habitual criminal provision of the Criminal Code.

¶ 5        At the jury trial, Officer Jonathan Dibiase of the Chicago Police Department testified that as he patrolled in his car with his partner, he saw Perry's car speeding. Officers in a separate police car helped him force Perry to stop.  He went to the driver's side, and there he saw the handle of a gun and a cup with an amber-colored liquid in the car's center console. He pulled

Perry out of the car, cuffed her, and took her behind her car. The other officers went to the passenger side of the car to get Johnson out of the car. Dibiase returned to the driver's side, and he saw Johnson shoving the gun toward the car's floorboard, wedging it between the passenger seat and the center console. Dibiase slapped Johnson to stun him. The other officers extracted Johnson from the car and cuffed him. No officer tested Perry for alcohol impairment.

¶ 6    Dibiase testified that he read Johnson his rights at the police station, but he did not record the interview. According to Dibiase, Johnson said "he was not trying to hurt anybody, what did we expect him to do when he had a gun in the car and he didn't want to be locked up."

¶ 7    The trial court permitted defense counsel to use Dibiase's grand jury testimony for impeachment. Dibiase admitted that to the grand jury, he testified as follows:

"'Question: While removing him from the vehicle did officers observe a black handle of a pistol wedged between the passenger's seat and the center console?'

'Answer: Yes.'"

¶ 8    Dibiase did not tell the grand jury that he first saw the gun before he removed Perry from the car, well before he helped remove Johnson from the car. The other officers partially corroborated Dibiase's account of the arrest, but none of them saw a gun, and none of them heard Johnson confess.

¶ 9    Perry admitted she had four prior felony convictions, including convictions for credit card fraud and identity theft. Perry testified that Johnson was drunk when she picked him up on January 3, 2019. Johnson immediately fell asleep in the car. A police car stopped at an angle in front of her, forcing her to stop, while a second police car drove up behind her car. When

Dibiase walked up to the driver's side of the car, she handed him her license and proof of insurance. He slapped them out of her hand. When Dibiase ordered her out of the car, she said, "I ain't got to do shit." But she got out of the car. Perry testified that there was no gun in the car.

¶ 10    Dibiase testified Perry did not offer her license and proof of insurance, and he did not slap anything out of her hand. Dibiase admitted that when he ordered Perry out of the car, she said, "I don't have to do shit."

¶ 11    Defense counsel stipulated Johnson had two prior qualifying convictions for purposes of the armed habitual criminal statute. Defense counsel asked the judge to instruct the jury on the use of prior inconsistent statements as substantive evidence. The judge instructed the jury instead only on the use of prior inconsistent statements for impeachment, as he told the jury: "The believability of a witness may be challenged by evidence on some form or occasion he made a statement that was not consistent with his testimony in this case." After the jury retired to the jury room, the judge said he found no inconsistency between Dibiase's grand jury testimony and his testimony at trial. The judge decided not to send the written instructions on prior inconsistent statements to the jury, and the judge did not mention or explain to the jury the difference between the oral instructions and the written instructions.

¶ 12    The jury found Johnson guilty of violating the armed habitual criminal statute. The trial court sentenced Johnson to seven years in prison. Johnson now appeals.

¶ 13                                ANALYSIS

¶ 14    On appeal, Johnson argues: (1) the evidence did not prove him guilty because (a) one of the predicate convictions penalized Johnson for conduct committed when Johnson was a minor, and (b) no reasonable trier of fact could find Dibiase credible; (2) the trial court committed reversible error when it (a) gave the jury written instructions that confusingly differed from the oral instructions and (b) failed to instruct the jury on the use of prior inconsistent statements as substantive evidence; and (3) Johnson's attorney provided ineffective assistance (a) by stipulating that he had two qualifying convictions and (b) by failing to object to evidence of Perry's prior convictions.

¶ 15                        Prior Conviction

¶ 16    The armed habitual criminal provision of the Criminal Code provides:

> "(a) A person commits the offense of being an armed habitual criminal if he or she receives, sells, possesses, or transfers any firearm after having been convicted a total of 2 or more times of any combination of the following offenses:
>
> (1) a forcible felony as defined in Section 2-8 of this Code;
>
> (2) unlawful use of a weapon by a felon; aggravated unlawful use of a weapon; aggravated discharge of a firearm; vehicular hijacking; aggravated vehicular hijacking; aggravated battery of a child; intimidation; aggravated intimidation; gunrunning; home invasion; or aggravated battery with a firearm; or
>
> (3) any violation of the Illinois Controlled Substances Act * * * that is punishable as a Class 3 felony or higher." 720 ILCS 5/24-1.7(a) (West 2018).

¶ 17        Johnson admits he has been convicted of a violation of the Illinois Controlled Substances Act that is punishable as a Class 3 felony or higher. He argues that the second conviction on which the State relied, a home invasion committed in 2002, does not qualify as a predicate offense for an armed habitual criminal charge because he was only 15 years old in 2002.

¶ 18        In *People v. Gray*, 2021 IL App (1st) 191086, this court held that a conviction of a 17-year-old for possession of narcotics did not qualify as a predicate offense for an armed habitual criminal charge because the conduct did not meet the requirement of (a)(3), which requires proof of conduct that "is punishable as a Class 3 felony or higher." If a 17-year-old committed the same conduct in 2016, at the time of the gun possession, the juvenile court would retain jurisdiction over the case, leading to a juvenile adjudication, not a conviction. Id. at ¶¶ 11-16.

¶ 19        The language of subsection (a)(2) differs significantly from the language of subsection (a)(3). Subsection (a)(2) requires only proof that the defendant possessed a firearm "after having been convicted *** [of] home invasion" and a second qualifying offense. The statute, on its face, does not require proof that the conduct would violate the home invasion statute in force at the time of the gun possession. Johnson stipulated that he had been convicted of home invasion committed when he was 15. Even though a 15-year-old charged with the same conduct would now remain in the jurisdiction of the juvenile court, Johnson's conviction qualifies as a predicate conviction under the literal terms of the armed habitual criminal statute.

¶ 20        Nonetheless, we agree with Johnson that this result creates an anomaly. If the current treatment of juveniles for conduct that violates narcotics statutes makes a prior conviction unavailable as grounds for an armed habitual criminal charge, why should the current treatment

of juveniles for conduct that constitutes home invasion, vehicular hijacking, or unlawful use of a weapon by a felon make no difference for such a charge? This case is similar to *People v. Miles*, 2020 IL App (1st) 180736, and *People v. Williams*, 2020 IL App (1st) 190414. In *Miles*, this court interpreted section 5-4.5-95(b) of the Unified Code of Corrections (730 ILCS 5/5-4.5-95(b) (West 2016)), which authorizes Class X sentencing for offenders found guilty of a Class 1 or Class 2 felony "after having twice been convicted *** of an offense that contains the same elements as an offense now (the date the Class 1 or Class 2 felony was committed) classified in Illinois as a Class 2 or greater Class felony." Miles had a felony conviction for aggravated vehicular hijacking that was committed when he was 15 years old. The *Miles* court found that the juvenile court acquired exclusive jurisdiction over minors charged with armed robbery and aggravated vehicular hijacking based on the 2016 amendment to section 5-130 of the Juvenile Court Act of 1987. Both armed robbery and aggravated vehicular hijacking previously disqualified minors from juvenile court jurisdiction. Hence, the legislature intended that minors who commit armed robbery and aggravated vehicular hijacking are to be treated differently from adults. The *Miles* court also found that had Miles committed his 2005 offense under the laws in effect on June 9, 2016, the juvenile court would have had exclusive jurisdiction, and Miles would not have received a Class 2 conviction. Instead, he would have received a juvenile court adjudication. Based on these findings, the *Miles* court held that the 2005 conviction should not have been considered a qualifying offense for Miles to be sentenced as a Class X offender. *Miles*, 2020 IL App (1st) 180736, ¶¶ 21-22.

¶ 21　　The *Williams* court followed *Miles*, holding:

"Defendant here was properly convicted of burglary in criminal court when he was 17 years old, but a[n] *** amendment to the Juvenile Court Act has since given the juvenile court exclusive jurisdiction over 17-year-old defendants charged with burglary. As *Miles* instructs, we look at the elements of his prior conviction as of the date defendant committed his current offense. [Citation.] On the date he committed the present offense, June 7, 2018, defendant's 2013 burglary conviction would have been resolved in delinquency proceedings rather than criminal court proceedings, and his predicate offense would have been a juvenile adjudication instead of a Class 2 or greater Class felony conviction. *** Following *Miles*, we find that defendant's prior burglary conviction is not an offense now *** classified in Illinois as a Class 2 or greater Class felony and, therefore, is not a qualifying offense for Class X sentencing." (Internal quotation marks omitted.) *Williams*, 2020 IL App (1st) 190414, ¶ 21.

¶ 22    We note that "there are powerful reasons to discount or disregard some or most juvenile convictions once the individual becomes an adult. First, on risk-related grounds the juvenile prior is likely to be less probative of re-offending, simply through the passage of time. Second, from a retributive perspective, juveniles are universally deemed to be less culpable than adult offenders convicted of crimes of comparable seriousness. Indeed, the Supreme Court has found that Third, the transition to adulthood should offer individuals an opportunity to shed their juvenile criminal transgressions, unless these are clearly predictive of further offending." See

*Should Juvenile Prior Crimes Count Against Adult Offenders? What Does the Public Think?* Robina Institute of Criminal Law and Criminal Justice.[1]

¶ 23    We further note that panels of the appellate court have disagreed with *Miles*, *Williams*, and *Gray*. See *People v. Williams*, 2021 IL App (4th) 191615 and *People v. Reed*, 2020 IL App (4th) 180533. However, we find *Miles*, *Williams*, and Gray persuasive. To obtain a conviction for aggravated vehicular hijacking (*Miles*), burglary (*Williams*), delivery of narcotics (Gray), or home invasion (here), the prosecution would need to prove that the defendant was at least 18 years old at the time of the offense, or that the defendant merited transfer to the criminal courts under the restrictive provisions for such transfer. See 705 ILCS 405/5-120 (West 2016). In view of the changes to the Juvenile Court Act of 1987, for most offenses age of the defendant operates as an element of the offense.

¶ 24    Here, the prosecution showed that Johnson had two prior felony convictions on his record. As to the conviction for home invasion committed when Johnson was 15, the prosecution did not show that the conviction was for conduct that "is punishable" as a felony on the date of the firearm possession in 2019. Because the prosecution failed to prove the two prior convictions of the kind required to show a violation of the armed habitual criminal provision of the Criminal Code, we reverse the conviction for violation of the armed habitual criminal provision of the Criminal Code.

¶ 25                                    Credibility

---

[1] The Robina Institute of Criminal Law and Criminal Justice is a nonpartisan research institute at the University of Minnesota Law School.

¶ 26       Johnson next points out that the conviction rests entirely on the testimony of one witness, Dibiase.  Johnson argues that no reasonable trier of fact could have found Dibiase's testimony credible. We will not reverse a conviction for insufficient evidence if any reasonable trier of fact could have found all the elements of the charged offense proven beyond a reasonable doubt. *People v. Wright*, 2017 IL 119561, ¶ 70.

¶ 27       We agree with Johnson that Dibiase's testimony raises significant credibility issues. According to Dibiase's testimony, he first saw the gun before he took Perry out of the car. He then cuffed Perry and escorted her to the back of the car – leaving Johnson with immediate access to the gun as Dibiase walked away. Dibiase's conduct, as Dibiase described it, appears at least grossly negligent, as it needlessly exposed Dibiase, Perry, and three other officers to mortal danger.

¶ 28       Only Dibiase testified to hearing Johnson confess to gun possession. Dibiase did not obtain from Johnson any signed statement, not even a signed waiver of his constitutional rights. Dibiase also did not ask police labs to check the gun for fingerprints. Hence, Dibiase's conduct appears inconsistent with reasonable police procedures.

¶ 29       However, we defer to the jury's credibility determinations. *People v. Coulson*, 13 Ill. 2d 290, 295-96 (1958). A reviewing court will not normally substitute its own judgment for that of the jury, especially with respect to credibility determinations. *People v. Locascio*, 106 Ill. 2d 529, 537, 478 N.E.2d 1358 (1985).We find the improbabilities in Dibiase's testimony insufficient to compel rejection of the jury's finding. Dibiase's testimony that he saw Johnson

10

pushing a gun between the seat cushions supports the conclusion Johnson possessed a gun. See *People v. Balark*, 2019 IL App (1st) 171626, ¶ 94.

¶ 30                                                                          Instructions

¶ 31         Johnson contends the court made two errors in instructing the jury. First, the court's written instructions did not include the oral instruction concerning prior inconsistent statements, and the court did not explain to the jury the difference between the oral and the written instructions. Second, the court did not instruct the jurors that they could consider Dibiase's grand jury testimony as substantive evidence.

¶ 32         The trial court has discretion to decide whether to give proffered instructions. *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 505, 771 N.E.2d 357 (2002). The court abuses its discretion if it gives unclear or misleading instructions or if the instructions do not fairly and correctly state the law. *Id.* at 507. We will not reverse the judgment based on erroneous instructions unless the error prejudiced the appellant. *Knight v. Chicago Tribune Co.*, 385 Ill. App. 3d 347, 358, 895 N.E.2d 1007 (2008).

¶ 33         The judge permitted Johnson to present evidence of Dibiase's grand jury testimony as a prior statement inconsistent with Dibiase's testimony at trial. The decision accorded with *People v. Billups*, 318 Ill. App. 3d 948, 957, 742 N.E.2d 1261, 1269 (2001), where the court explained that it is left to the sound discretion of trial court to determine whether a witness' prior statement is inconsistent with his present testimony. A direct contradiction of the testimony is not required for a prior statement of a witness to be considered inconsistent with

his trial testimony. A "prior statement is deemed inconsistent when it omits a significant matter that would reasonably be expected to be mentioned if true." *Billups*, 318 Ill. App. 3d at 957.

¶ 34    Dibiase testified to the grand jury that he saw the gun when he removed Johnson from the car. A reasonable trier of fact could find that if he had seen the gun earlier, before he removed Perry from her car, Dibiase would have told the grand jury. The judge did not abuse his discretion when he allowed the grand jury testimony into evidence and read the jury the first part of IPI 3.11, instructing the jury on the use of the prior testimony for impeachment. The judge decided he had erred in the oral instructions. Hence, the judge gave the jury written instructions that made no reference to prior inconsistent statements.

¶ 35    To withdraw an erroneous instruction after reading it to the jury, the court must inform the jury that the court is withdrawing the instruction. *Osmon v. Bellon Construction Co.*, 53 Ill. App. 2d 67, 202 N.E.2d 341 (1964). This court has held that recalling or withdrawing the instruction is the only way to correctly remove the error. See *Bochat v. Knisely*, 144 Ill. App. 551 (1908), where the court had read the instructions and, as the jury was about to retire, the court called them back and informed them that one instruction he had given was incorrect. The judge then read it to them, stated that he was withdrawing it, and they should give it no consideration by treating it as if it had not been given. The Appellate Court held that this was the correct procedure. Both a withdrawal of the erroneous instruction and the giving of a correct instruction have been held necessary to correct an error. "The withdrawal must be express and unqualified and in language so explicit as to preclude the inference that the jury might have

12

been influenced by the erroneous instruction." *Osmon v. Bellon Construction Co.*, 53 Ill. App. 2d 67, 71, 202 N.E.2d 341 (1964).

¶ 36 "[J]ury instructions should not be misleading or confusing (citation); and the giving of conflicting instructions *** is not harmless error." *People v. Bush*, 157 Ill. 2d 248, 253-54, 623 N.E.2d 1361, 1364 (1993). We find the trial judge erred by sending the jury written instructions that differed from the oral instructions, without explaining the difference to the jury.

¶ 37 The conviction here rested entirely on the credibility of uncorroborated portions of a well-impeached witness's testimony. We find the error in instructing the jury about the use of prior inconsistent statements for impeachment prejudiced Johnson. We reverse and remand for a new trial. Because of our finding on this issue, we need not address the other alleged instruction error or Johnson's claim that his counsel provided ineffective assistance.

¶ 38                                                    CONCLUSION

¶ 39 The trial court erred by giving the jury written instructions that differed significantly from the oral instructions without explaining the difference. In view of the weak evidence against Johnson, we find the error prejudicial. We find the evidence sufficient to permit retrial without violating double jeopardy principles.

¶ 40 We reversed Johnson's conviction for armed habitual criminal because he committed one of the predicate offenses when he was 15 years old. As relief on this issue, Johnson has requested that we reduce his conviction to unlawful use of a weapon by a felon and remand for resentencing. However, because we also reverse Johnson's conviction based on the trial court's error in instructing the jury, we remand for a new trial.

¶ 41   Reversed and remanded.