2022 IL App (1st) 211000 -U

No. 1-21-1000

March 14, 2022

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

|  |  |  |
|---|---|---|
| IN RE THE MARRIAGE OF | ) ) ) | Appeal from the Circuit Court of Cook County, Illinois County Department, Domestic |
| SOFIA PATEL, | ) ) | Relations Division |
| Petitioner-Appellee, | ) ) | No. 2019 2019 D 6716 |
| v. | ) ) | The Honorable |
| ATIK PATEL, | ) | Abby Fishman Romanek Judge Presiding. |
| Respondent-Appellant. |  |  |

_____

JUSTICE WALKER delivered the judgment of the court, with opinion.
Justice Pucinski and Justice Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not abuse its discretion by denying a motion for continuance made on the date of trial, or granting an attorney's motion for leave to withdraw, filed less than 21 days prior to trial, where the client did not oppose the motion and represented himself in settlement negotiations prior to the filing of the motion. Where the appellant is not prejudiced by an erroneous evidentiary ruling, the appellate court will not reverse a judgment. We find that the evidence supports extension of the order of protection and was sufficient to support the order for supervised visitation with the minor child. The trial judge's failure to obtain Atik's express consent to the *ex parte* discussion, as required by Cook County rules, amounts to harmless error.

¶ 2     Sofia Patel filed a petition for dissolution of her marriage to Atik Patel.  The trial judge held an evidentiary hearing and entered an order that adopted the terms to which the parties agreed in their negotiations.  On appeal, Atik argues the trial judge erred by (1) letting his attorney withdraw; (2) allowing the guardian *ad litem's* report into evidence; (3) allowing hearsay into evidence; (4) extending an order of protection; (5) extending supervision for Atik's visits with his son; (6) engaging in an *ex parte* discussion with Sofia's attorney; and (7) denying Atik's right to due process.

¶ 3     We find no abuse of discretion in the judge's evidentiary rulings and the decision to permit Atik's attorney to withdraw. The record sufficiently supports the extensions of the orders of protection and supervision.  Because Atik knew about the *ex parte* meeting before it began and a court reporter transcribed the non-prejudicial discussion, we find no grounds for reversal.  The judge afforded Atik due process.  Accordingly, we affirm the trial court's judgment.

¶ 4                                I. BACKGROUND

¶ 5     Sofia and Atik married in 1996, and they had two children: a daughter, Mehreen, born in 2004, and a son, Zaid, born in 2009.  Sofia filed for dissolution of the marriage in 2019, and the court appointed David Sternfield to act as guardian *ad litem* for the children.  On June 3, 2021, the judge entered an order of protection barring Atik from contacting Mehreen.

¶ 6     On July 6, 2021, about two weeks before the date set for trial, Atik's attorney, Jonathan Merel, filed a motion for leave to withdraw as counsel due to irreconcilable differences. Atik responded by filing an appearance indicating his intention to represent himself.  On July 17, 2021, two days before trial, Sternfield filed a report with recommendations for the allocation of parental responsibilities.

¶ 7     The trial judge held the hearing on July 19, 2021, via Zoom, with the parties, their attorneys, and the court reporter all present. The judge first asked Atik and Merel to address the motion for leave to withdraw.  Merel explained:

> "Atik Patel has been acting as his own attorney since we left Your Honor's courtroom. He has had settlement discussions with [Sofia's attorney]. He has had exchanges of drafts, redlines. My office has been *** on the outside looking in since then."

¶ 8     Atik did not object to the motion for leave to withdraw.  He told the court he had contacted Merel repeatedly seeking the complete file for the case. Merel assured the court that Atik received a copy of "every piece of paper that's exchanged in this case."

¶ 9     The judge stated:

> "Merel's law firm was the eighth attorney hired by Mr. Atik in this case, which was filed in 2019. It's a three-year-old case, which has been set for trial for likely at least a year ***.
>
> And when Mr. Merel came in, I informed him that he was a number of attorneys in. *** I told him that I wasn't likely going to let him out. I told him *** that there was no chance that the trial was going to be continued. So, I told Mr. Patel that as well.
>
> *** I think we are close [to] agreement. *** Mr. Merel is going to be granted leave to withdraw. Mr. Patel is in.
>
> It is my understanding that there aren't really any documents that he is in actual need of for purposes of going to trial, should we need to try this case today, but any documents that you need are going to [be] made available to you because [Sofia's

attorney] Mr. Husain likely has them. Mr. Sternfield likely has them, the Court has them, and Mr. Merel has provided them."

¶ 10 One of the attorneys working for Merel agreed to assist Atik as standby counsel. Sofia's attorney presented to the judge a proposed order, labeled an agreed order, setting out the terms to which the parties had tentatively agreed. The judge asked Atik about each term of the agreement. Atik agreed to all terms, including the provision for no contact with Mehreen and supervision for his visits with Zaid. Atik asked the judge to vacate the order of protection. The judge stated she would address the order of protection separately, after allocating parental responsibilities and resolving the financial issues. Atik insisted that his agreement to all other terms depended upon the end of the order of protection. Sofia asked the judge to leave the order of protection in place. Atik then "retract[ed] all the points" to which he had agreed. The judge proceeded immediately to trial.

¶ 11 Sofia called Sternfield as her witness. Atik objected to Sternfield's report as untimely because Sternfield distributed it only two days before trial. The judge admitted the report into evidence.

¶ 12 Sternfield's testimony echoed his report. Due to Atik's estrangement from Mehreen, he recommended joint counseling for them with Joanne Smith. Sternfield recommended extension of the order of protection for Mehreen. Sternfield wrote in his report:

"I have witnessed erratic and irrational behavior by Atik. For example, on July 28, 2020, I called Atik, and he screamed at me 'you are acting like a god.' He was screaming at me. He didn't want me to help his daughter with her google. He told me I was playing God despite me telling him that I was just looking out for his childrens' best interest. He asked me repeatedly if I wanted to be their father.

\*\*\*

On May 3, 2020, I spoke with Mehreen, and she was upset by the text messages sent by her dad. I spoke with Joanne Smith who said dad was rude and spoke to her in an unacceptable manner and she is concerned about dad being near children for fear of emotional abuse.

On April 24, 2021, I received a call from Mehreen. She told me that her dad called her boss \*\*\* and told him that [her work] is the cause for her estrangement from her dad and that she should not work there; Mehreen's boss replied that Mehreen had a right to work there. Atik then threatened to come to [Mehreen's workplace] on 4/25/21. Mehreen was upset and scared about Atik coming to her place of work.

On May 25, 2021, Atik emailed Mehreen saying, 'You're nothing for me anymore' 'You're not allowed to be my daughter' 'Stop contacting [Sternfield], I am not paying for you to speak with him.'"

¶ 13 Sternfield testified that Mehreen showed him an email she received from Atik. The judge admitted a copy of the email into evidence over Atik's objection. The email says:

"Once you turn 18 in March remove my name from your records. I don't want to associate with you or anything you do. \*\*\*

You are a huge disappointment for me and what you did knowingly or unknowingly is gravest sin for a Muslim. I will not forgive you in my life for that. I feel ashamed to tell anyone I had a daughter. \*\*\*

\*\*\* You have \*\*\* fought against me \*\*\* by testifying against me, giving my emails to that man illegally and falsely accused me of violence and abuse \*\*\*. This is the gravest sin a child can do against a parent, and I cannot ever forgive you for that."

¶ 14    Atik objected to testimony about Sternfield's conversations with Mehreen as hearsay. The judge overruled the objection. Atik particularly objected that the evidence regarding what Mehreen said about the workplace incident constituted compound hearsay. The judge overruled the objection.

¶ 15    Sternfield's report also recommended extension of the order for supervision of Atik's visits with Zaid. According to the report, Zaid wanted to see Atik, but Zaid said, "If Pat [the supervisor] is not there, it would be bad." Sternfield wrote:

> "Throughout my appointment in the case, Atik has exhibited volatility and instability with respect to the management of his anger and in regard to acting in the best interest of his children. When Atik's parenting time was unsupervised, on two separate occasions, Atik returned Zaid to So[f]ia early due to his inability to manage his anger toward Zaid. Without supervised parenting time, I am concerned Atik will continue to disparage So[f]ia and Mehreen to Zaid and continue to exhibit issues with anger management.
>
> **\*\*\***
>
> [Zaid] is worried that if he gets to his dad's his dad will start screaming at him; Zaid is glad that Atik lives in an apartment instead of house because 'neighbors could hear his screaming.'
>
> **\*\*\***
>
> Zaid is currently suffering from headaches as a result of the stress created by seeing his father even in a supervised parenting time setting.
>
> \*\*\*

On May 4, 2020 when I spoke with Zaid, he told me, his dad told him he and his sister were disappointments. Zaid said his dad spoke to him about his mom owing his dad money, his mom stealing from his dad ***."

¶ 16    At the Zoom hearing, Sternfield closed by stating: "[Atik] has shown himself to be unable to control his behavior when he's with his child. And the behavior that he exhibits in front of his child when not supervised is problematic and upsetting, not in the child's best interest, and to the point that -- that supervision is required"

¶ 17    Atik admitted that he spoke to Mehreen's boss in April 2021, but he called only to ask whether Mehreen worked during school hours, and the boss said Atik could come speak with the manager about the problem. Atik admitted he told Sternfield he should not listen to Mehreen's complaints. Atik did not remember whether he sent Mehreen the emails admitted as exhibits, but he may have sent emails with messages to the same effect.  The following exchange occurred on cross-examination of Atik:

"Q.· Did you ever email M[eh]reen saying that there's no relationship between the two of you?

A. *** [I]t is obvious to everyone that there was no relationship ***. I don't actually remember what *** I said or something, but yeah. I did say that there's no relationship left.· Yes.

***

Q. Okay. Did you say, once you turn 18 in March remove my name from your records?

A. I don't know, but I think it makes sense that she should not have *** my name associated with that because that's what I feel. She doesn't want anything to do with me, so I feel like, yeah, it is clear that she should not have my name.

Q. So you want her to change her last name, right?

A. I believe *** it will be perfectly fine for me."

¶ 18    Atik argued that he had not emotionally abused his children.  The judge said:

"Mr. Patel, you have no idea what emotional abuse is. *** You're blaming everybody else for your own issues, and it's a problem. You're blaming JoAnne Smith, you're blaming your daughter, you're blaming your son, you're blaming Mr. Sternfield especially, and you're blaming your lawyers, and that's just not working. ***

*** You don't see things as emotional abuse, which are clearly emotional abuse, clearly emotional abuse for your daughter. The allocation judgment as discussed previously is going to be entered. The order of protection for plenary two years is granted."

¶ 19    The judge then started to address financial issues.  Atik indicated he did not understand the proceeding that the judge termed a "binding pre-trial." The judge suggested Atik could enter a breakout room with standby counsel so that counsel could explain the procedure. Atik agreed and entered a breakout room, leaving the judge, Sofia, Sofia's attorney, and the court reporter in the main meeting. The judge discussed the negotiated financial settlement with the attorney in a brief discussion the court reporter transcribed. The transcript reads:

"THE COURT: What was the number, Naveed? You were at 143. He's at 147.

MR. HUSAIN: He was at 137 for income.

THE COURT: That's what I meant.

MR. HUSAIN: Yeah.

THE COURT: So, for -- if he agreed to 142 --

MR. HUSAIN: Yeah.

THE COURT: -- then we're done.

MR. HUSAIN: You know, it -- what it comes down to, Your Honor, is, we have the two houses – or there's three houses. So, one would be allocated to wife.

THE COURT: Yeah.

MR. HUSAIN: One would -- two of them would be allocated to him.

THE COURT: Uh-huh (affirmative).

MR. HUSAIN: And it basically equals out except for a $6,000 payment from Sofia to him. So our position was, we will let go of the $120,000 of dissipation and just pay my client a few thousand dollars and not have my client pay him anything, and we would've called it a day.· So that was kind of our position.· And then, I think the other, too, is that when it comes to adding up maintenance and child support plus her $40,000 income, it actually comes out to 33-66 -- or 67 for split of extracurricular and all that other stuff. He was at 50-50.

THE COURT: I thought we were closer to 60-40? Oh, 33 -- oh.

MR. HUSAIN: Yeah. Thirty -- yeah. If we add up both of their incomes, he has 66 percent of the total income for pro rata share of expenses and stuff like that.

THE COURT: All right. You had in yellow or something about him paying to SDU, which is the only way I think we should do it.

MR. HUSAIN: Yeah.

THE COURT: I mean, I would just -- you know, I'm certainly recommending that it go through SDU.

MR. HUSAIN: Absolutely.

THE COURT: And we -- you do it by separate order, for sure. Why don't you work on the -- work on getting --

MR. HUSAIN: Oh --

THE COURT: -- while they're --

MR. HUSAIN: -- the OP entered.

THE COURT: No. The -- on the OP.

MR. HUSAIN: Yeah. I'll -- let me -- I'll finish the OP, Your Honor.

THE COURT: Do that right now as soon as you can because I --

MR. HUSAIN: Yeah.

THE COURT: -- the sheriff's office is difficult.

MR. HUSAIN: Sure.

(Whispered conversation.)"

¶ 20    After Atik returned to the main meeting, he agreed to maintenance in accord with statutory guidelines based on his income of $142,000 per year and ascription to Sofia of $40,000 per year. Sofia also accepted the proposal, although $40,000 greatly exceeded her actual annual income

since the onset of the pandemic, which caused her to close her nail salon. The parties also agreed to the proposed allocation of bank accounts and other assets.

¶ 21　On July 19, 2021, the attorneys prepared an order at the conclusion of the Zoom hearing, and the judge signed. The order said:

> "This cause coming to be h[e]ard on the agreement of the parties, *** BASED UPON THE STIPULATION OF THE PARTIES, THE COURT FINDS: *** The parties have reached an agreement on the child related issues in this cause ***.
> ***
> *** Each party represents and acknowledges that he or she has fully read this Agreement, consulted with each other, carefully considered same, and have signed and executed same after such consultation, that the signing of this Agreement is free and without force *** and that each party signed same with the full knowledge of said parties' rights, obligations, and responsibilities."

¶ 22　A few days later, the judge vacated the order entered on July 19, 2021, and entered an amended order, dated July 26, 2021, without the language of agreement, but otherwise retaining the terms of the original order. Atik now appeals.

¶ 23　　　　　　　　　　　　　II. ANALYSIS

¶ 24　Atik argues that the trial judge erred by (1) allowing his attorney to withdraw; (2) admitting Sternfield's report into evidence; (3) allowing hearsay into evidence; (4) extending the order of protection; (5) extending the order for supervision of Atik's visits with Zaid; (6) discussing the case with Sofia's attorney *ex parte;* and (7) depriving Atik of due process. Sofia has not filed a brief in this appeal. We decide the issues on the basis of the record and Atik's brief. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill.2d 128 (1976).

¶ 25                                    A. Attorney's Withdrawal

¶ 26    This court will not overturn a decision on a motion for leave to withdraw unless the trial court abused its discretion. *In re J.D.*, 332 Ill. App. 3d 395, 404 (2002). An abuse of discretion occurs when no reasonable person would take the view adopted by the trial court. *In re Marriage of Heroy*, 385 Ill. App. 3d 640, 651 (2008). Supreme Court Rule 13(c) provides:

> "An attorney may not withdraw his appearance for a party without leave of court and notice to all parties of record. Unless another attorney is substituted, he must give reasonable notice of the time and place of the presentation of the motion for leave to withdraw ***. Such notice shall advise said party that to ensure notice of any action in said cause, he should retain other counsel therein or file with the clerk of the court, within 21 days after entry of the order of withdrawal, his supplementary appearance." Ill. S. Ct. R. 13(c) (eff. July 1, 2017).

¶ 27    The judge allowed Merel to withdraw, although Merel filed his motion for leave to withdraw only 13 days before trial. Not all failures to allow the 21-day transition period amount reversible error. To determine whether a failure constitutes a reversible error, this court has considered the particular facts and circumstances surrounding the motion to withdraw. *In re Marriage of Pavlovich*, 2019 IL App (1st) 172859, ¶ 19. Atik represented himself in negotiations with Sofia's attorney for some time before Merel filed the motion for leave to withdraw. Atik did not object to Merel's request to withdraw; he argued only that he needed Merel's entire file. In view of Atik's substantial work *pro se* before Merel sought leave to withdraw and Atik's decision not to oppose the motion, we find the judge did not abuse her discretion by granting leave to withdraw.

¶ 28 Atik also contends the trial judge should have continued the case because Atik needed more documents. The trial judge has discretion to continue a case, and we will not disturb the judge's decision on a motion to continue unless there is an abuse of discretion. *Stern v. Stern*, 179 Ill. App.3d 313, 319 (1989). Merel, as an officer of the court, stated he had given Atik copies of every document the parties exchanged. In arguing he needed more documents, Atik mentioned Sofia's financial statement, but then he admitted he had the documents. He did not identify any missing document or any other financial exhibit that he had not received prior to trial. Atik still has not indicated what documents he needed or what difference the document could have made.

¶ 29 The trial judge had delayed the trial due to Atik's inability to work with any of the many attorneys he previously retained. As this case involved issues of child custody, and the parties had largely agreed on most issues, further delay appeared unnecessary. We find no abuse of discretion in choosing not to order a continuance. See *In re Marriage of Knoche*, 322 Ill.App.3d 297, 308, 750 N.E.2d 297 (2001).

¶ 30                                    B. Guardian's Report

¶ 31 Atik next argues that the judge should not have allowed Sternfield's report into evidence because Sternfield distributed it on July 17, 2021, only two days before trial. This court will not reverse the trial judge's rulings on the admissibility of evidence "unless the trial judge abused its discretion, and the ruling prejudiced the appellant." *Knight v. Chicago Tribune Co*., 385 Ill.App.3d 347, 355 (2008).

¶ 32 Atik's testimony shows his familiarity with the events described in Sternfield's report. Atik knew, from prior proceedings, why Sternfield recommended the order of protection and supervision for Atik's visits with Zaid. Atik argues he should have had more time to prepare cross-examination, but he does not suggest what testimony he could have elicited with preparation or

how the preparation might have affected the result of the proceeding. Because Atik has not shown he suffered prejudice due to the belated distribution of the report, we find no reversible error. See *People v. DeRossett*, 237 Ill.App.3d 315, 331 (1992); *United States v. Bryson*, 94 F. App'x 389, 396–97 (7th Cir. 2004) (no reversible error where defendant did not show how evidence would have differed if the judge had allowed him more time to prepare).

¶ 33                                                    C. Hearsay

¶ 34     Atik contends the judge erred by overruling his hearsay objection to Sternfield's testimony and statements in Sternfield's report about conversations with Mehreen. Section 606**.**5(c) of the Illinois Marriage and Dissolution of Marriage Act establishes that hearsay statements of a child "relating to any allegations that the child is an abused or neglected child * * * shall be admissible in evidence in a hearing concerning allocation of parental responsibilities." 750 ILCS 5/606**.**5(c) (West 2020). The conversations concerned Atik's conduct that Mehreen considered abusive. The judge did not abuse her discretion by permitting Sternfield to report and testify about his conversations with Mehreen. See *Daria W. v. Bradley W.*, 317 Ill. App. 3d 194, 200 (2000).

¶ 35     Atik points out that Sternfield's testimony and report included compound hearsay in that Sternfied testified about what Mehreen stated her boss said to her about Atik's call to her boss. We find that the judge did not rely on testimony about that conversation in ruling on the order of protection. Atik has not shown prejudice due to the compound hearsay. We find no reversible error. *Knight*, 385 Ill. App.3d at 358.

¶ 36                                       D. Order of Protection

¶ 37     Atik argues the judge erred by extending the order of protection as to Mehreen. Section 214(c) of the Domestic Violence Act, concerning orders of protection, provides:

"(1) In determining whether to grant a specific remedy, other than payment of support, the court shall consider relevant factors, including but not limited to the following:

the nature, frequency, severity, pattern and consequences of the respondent's past abuse, neglect, or exploitation of the petitioner *** and the likelihood of danger of future abuse, neglect, or exploitation to petitioner or any member of petitioner's or respondent's family or household; ***

the danger that any minor child will be abused or neglected * * *

(3) *** [T]he court shall make its findings in an official record or in writing, and shall at a minimum set forth the following:

(i) That the court has considered the applicable relevant factors described in paragraphs (1) and (2) of this subsection.

(ii) Whether the conduct or actions of respondent, unless prohibited, will likely cause irreparable harm or continued abuse.

(iii) Whether it is necessary to grant the requested relief in order to protect petitioner or other alleged abused persons." 750 ILCS 60/214(c) (West 2020).

¶ 38       Here, the trial judge entered the order of protection on June 3, 2021 and extended the order on July 26, 2021. The judge may extend an order of protection "on the basis of petitioner's motion or affidavit stating no material change in circumstance has occurred since the entry of the order." *Lutz v. Lutz*, 313 Ill.App.3d 286, 289 (2000). The judge need not repeat findings when it extends an order of protection. *Mowen v. Holland*, 336 Ill.App.3d 368**,** 376 (2003) (a trial judge's findings in support of a plenary order are sufficient to satisfy the requirements of the Act where the plenary

order is an extension of the emergency order, and the emergency order of protection makes specific findings of neglect and abuse).

¶ 39    Atik has not included in the record on appeal a transcript of the proceedings that resulted in the original order of protection. The case before us is not like *Hedrick-Koroll v. Bagley*, 352 Ill. App. 3d 590, 593–94 (2004), where the record showed the appellant unsuccessfully attempted to obtain, from the court clerk, the transcript of the proceeding that led to the initial order of protection. When this court has no record of the trial court's proceeding, we presume the trial court had a sufficient factual basis for its holding and that its order conforms with the law and was not an abuse of discretion. *In re Marriage of Kiferbaum*, 2014 IL App (1st) 130736, ¶ 23.  We find the absence of findings in the order entered on July 26, 2021, does not require reversal.

¶ 40    Atik contends the evidence at trial does not support the extension of the order of protection. We will not overturn an order of protection unless the trial judge's findings are against the manifest weight of the evidence. *Best v. Best*, 223 Ill. 2d 342, 350 (2006). Section 214 authorizes issuance of an order of protection "[i]f the court finds that petitioner has been abused by a family or household member or that petitioner is a high-risk adult who has been abused, neglected, or exploited, as defined in this Act." 750 ILCS 60/214(a) (West 2020). The Domestic Violence Act includes harassment in the definition of abuse.  750 ILCS 60/103(1) (West 2020).  "'Harassment means knowing conduct which is not necessary to accomplish a purpose that is reasonable under the circumstances; would cause a reasonable person emotional distress; and does cause emotional distress to the petitioner." 750 ILCS 60/103(7) (West 2020).

¶ 41    Atik admitted that in his emails to Mehreen he stated something similar to: "Remove my name from your records. I don't want to associate with you or anything you do. *** You are a

huge disappointment to me and what you did knowingly or unknowingly is gravest sin for a Muslim. I will not forgive you in my life for that. I feel ashamed to tell anyone I had a daughter."

¶ 42    The emails admitted into evidence and Atik's testimony show no reasonable purpose for his conduct and support the conclusion that a reasonable daughter would find the conduct emotionally distressing. Sternfield's testimony and report support the conclusion that the emails caused Mehreen emotional distress. The evidence supports extension of the order of protection. See *Best*, 223 Ill. 2d at 350.

¶ 43                              E. Supervision

¶ 44    Atik argues the judge failed to make the findings needed for the order requiring supervised visitation with Zaid. Under the Illinois Marriage and Dissolution of Marriage Act, "the court shall not place any restrictions on parenting time ***, unless it finds by a preponderance of the evidence that a parent's exercise of parenting time would seriously endanger the child's physical, mental, moral, or emotional health." 750 ILCS 5/602.7(b) (West 2020). For the supervision order, like the order of protection, the judge used the order the attorneys prepared as an agreed order, and the judge did not add any further findings. The supervision order extended a prior order.  Atik has not included in the record on appeal a transcript of the hearing that resulted in the initial order for supervision.  We must presume the judge had an adequate basis for the initial order and made all required findings at the hearing. The statutes do not require repetition of those findings for the extension of the order.  We find the absence of specific findings in the allocation order regarding the danger to Zaid does not require reversal here.

¶ 45    We also find Sternfield's testimony and report concerning Zaid sufficient to support supervised visitation.  Atik's "volatility and instability," difficulty controlling his anger with Zaid, derisive comments about Zaid's mother and sister, and Zaid's express preference for supervision

all support the conclusion that unsupervised visits with Atik would endanger Zaid's emotional health. See *In re Marriage of Mayes*, 2018 IL App (4th) 180149, ¶ 60. The trial judge did not abuse her discretion by extending Atik's supervised visits with Zaid. See *In re Marriage of Betsy M.*, 2015 IL App (1st) 151358, ¶¶ 59-62.

¶ 46                                  F. *Ex parte* Discussion

¶ 47    After the trial judge announced her decision on the allocation of parental responsibilities, the judge addressed financial issues. Atik's comments indicated he did not understand the nature of the proceedings. The judge suggested Atik could privately discuss the procedures with standby counsel, and Atik agreed to the suggestion. When Atik left the Zoom meeting and entered the breakout room, he knew the judge, Sofia, Sofia's attorney, and the court reporter would remain in the Zoom meeting. Atik did not object, and he now contends that the discussion between the judge and Sofia's attorney while Atik was in the breakout room violates restrictions on *ex parte* contact and requires reversal.

¶ 48    *Bauer v. Memorial Hospital*, 377 Ill. App. 3d 895, 912 (2007), guides our resolution of the issue. The *Bauer* court found:

> "In the present case, *** it was no secret that an *ex parte* communication occurred, nor was the subject of the *ex parte* communication a secret. Instead, the *ex parte* communication occurred during the trial, and all the parties and their attorneys were aware that it was occurring ***. [A] reversal is unnecessary because there is no suggestion of bias or prejudice on the part of the trial judge, *i.e.*, there is no suggestion that there was any outside influence or that the case was decided on any basis other than the evidence presented in the case."

¶ 49    We find that the judge did not discuss anything secretly, and the court reporter transcribed the conversation with Sofia's attorney. The conversation concerned agreements the parties had already reached in their extensive negotiations on financial issues. Cook County Circuit Court Rule 17.4 (eff. Feb. 1, 1985), provides that, "in civil cases with the express consent of all parties of record, a judge may communicate with fewer than all participants to promote settlement, for the purpose of scheduling or for any other similar purposes." The limited, transcribed discussion concerned only topics appropriate for *ex parte* discussion under Cook County rules. The judge's conduct does not suggest bias. The trial judge's failure to obtain Atik's express consent to the *ex parte* discussion, as required by Cook County rules, amounts to harmless error. See *Bauer*, 377 Ill. App. 3d at 912. We find the brief *ex parte* exchange does not warrant reversal here.

¶ 50                                    G. Due process

¶ 51    Finally, Atik contends the confusing proceeding denied him due process. The judge and the attorneys referred to the hearing as a "binding pretrial." We have found no case or statute explaining a binding pretrial. The judge treated the proceedings as something like binding arbitration. See *In re Marriage of Haleas*, 2017 IL App (2d) 160799, ¶ 5. Atik had a full and fair opportunity to decide whether to accept the settlement terms to which the parties tentatively agreed in their extensive negotiations. Atik had a full and fair opportunity to present evidence on contested issues, to cross-examine Sofia's witness and challenge her exhibits, and to have an unbiased judge weigh the evidence and resolve the contested issues. "Due process of law is served where there is a right to present evidence and argument in one's own behalf, a right to cross-examine adverse witnesses, and impartiality in rulings upon the evidence which is offered." *Piotrowski v. State Police Merit Board*, 85 Ill.App.3d 369, 373 (1980). We find no violation of Atik's right to due process.

¶ 52                                  III. CONCLUSION

¶ 53     The trial judge did not abuse her discretion by allowing Merel's unopposed motion to withdraw, denying Atik's request for a continuance, admitting the guardian *ad litem's* report into evidence, and allowing hearsay concerning the guardian's discussions with the minor children into evidence. Atik has not presented a sufficient record for this court to determine whether the trial judge made the necessary findings when she entered the initial order of protection or the initial order for supervision of Atik's visits with Zaid. The record sufficiently supports the trial judge's decision to extend those orders. The transcribed *ex parte* communication between the judge and Sofia's attorney during the brief time Atik left the Zoom meeting does not require reversal. The judge afforded Atik due process. Accordingly, we affirm the trial court's judgment.

Affirmed.